# WRIGHT VS. THE HARTFORD FIRE INSURANCE COMPANY.

FIRE INSURANCE: EVIDENCE. (1, 2) *Condition as to person by whom loss should be certified, construed.* (3) *Burden of proof as to omission or misstatement of fact in application.* (4, 7) *When such omission or misstatement not fatal.* (5, 6) *Questions of fact as to breaches of conditions in policy, settled by the verdict.*

REVERSAL OF JUDGMENT. (8) *When judgment not reversed for refusal of correct instruction.* (9) *Nor on weight of evidence.*

1. By the conditions of a fire insurance policy, the assured was required, after a loss, to produce the certificate, under seal, of a magistrate, notary public or commissioner of deeds, "*nearest to the place of the fire, and not concerned in the loss* or related to the assured," stating certain facts. *Held,* that the words "not concerned in the loss" are intended to secure an impartial arbiter between the parties — one who will neither make nor lose, directly or indirectly, by the determination of their rights and obligations in respect to the loss.

2. In an action upon such a policy, it appeared that H., a magistrate, owned and occupied both as a residence and a store, a house adjoining that of plaintiff; that it was burned, and the goods therein injured, by fire communicated directly from plaintiff's building at the time of the loss for which a recovery is here sought; that H. had no insurance upon his said house and goods; and that he had entered a complaint before a magistrate against the plaintiff, charging him with setting the fire. *Held,* that, as a certificate of H., such as the policy required, would be almost conclusive against his right to recover for his own loss in an action against the plaintiff, he "was interested in the loss," within the meaning of the policy, and it was sufficient for plaintiff to secure such certificate from the magistrate or other specified officer nearest the fire, other than H.

3. One defense to an action on a fire insurance policy was, that there were buildings within less than 100 feet of the insured building, which were not disclosed in the application, and on the trial there was proof of the existence of a building on an adjoining lot, not mentioned in the policy, but there was no proof of the distance between this and the building insured. *Held,* that the burden was on the defendant to prove that such other building was less than 100 feet distant from that of the plaintiff, and in the absence of such proof it must be *presumed* to have been at a greater distance.

4. The evidence shows that there was also a building *across the street* less than a hundred feet from the one insured, but it appears that defend-

Wright vs. The Hartford Fire Insurance Company.

ant's agent went upon plaintiff's premises and examined them before taking the risk, and does not claim to have been ignorant of the existence and location of the building across the street; and there is no testimony tending to show that plaintiff *fraudulently or intentionally* omitted to mention it in his application. *Held*, that such omission does not vitiate the policy, notwithstanding a provision therein by which it was to be void if the application omitted to disclose any fact material to the risk.

5. By the terms of the policy it was to be void if the assured was not the owner in fee simple of the land on which the insured building stood, and if that fact was not expressed in the written portion of the policy. Plaintiff in his application represented himself as the owner in fee simple of all the land on which the building stood; and at the trial defendant claimed that the title to a strip of said land, about four feet wide, was not in plaintiff, but in the owner of an adjoining lot. It appears that until after the fire all parties supposed plaintiff to be the owner of such strip, and that the doubt as to his title thereto was raised by a subsequent survey; the evidence tending to show that the title was not in him was very unsatisfactory; and the jury were instructed that if they found he was not the owner, he could not recover. *Held*, that the verdict, for the plaintiff, was conclusive of that question in this case.

6. One part of the insured building was of brick, and the other a frame addition; and the assured stated in his application that the brick wall between them was thirteen inches thick. In the opinion of this court the testimony shows that said wall was only about eight and a half inches thick. There was, however, testimony tending to show that it was a thirteen-inch wall, and, under the instructions, the jury must have so found. *Held*, that this court cannot interfere.

7. It appearing that plaintiff estimated the thickness of the wall from his measurement of the door jamb, and that there was no testimony tending to show that he did not make an honest estimate; and it appearing further that defendant's agent was present when such measurement and estimate were made, and had full opportunity to correct the same, if erroneous—this court would hesitate to reverse the judgment, even though it were *conclusively* proved that the wall was less than thirteen inches thick.

8. The policy required that if the personal property were damaged by fire, the assured should put it in the "best order possible." In this case the value of such property damaged was trifling, and there was no proof that such value could be improved by putting it in better order. *Held*, that there was no error in a refusal of the court to give an instruction on that point asked by the defendant.

9. Where questions of fact were fairly submitted to the jury under instructions which contained no error as against the appellant, and the court below refused to set aside the verdict, this court will not disturb it on the ground that it was against the weight of evidence.

APPEAL from the Circuit Court for *Rock* County.

Action upon a policy of insurance, dated August 6, 1872, in and by which the defendant insurance company insured the plaintiff against loss or damage by fire to his hardware store or tin-shop in Lima, in this state, to the amount of $700; to his stock of merchandise therein, $250; and to his tools and fixtures therein, $250. The store and most of its contents were burned on the evening of September 6, 1872. The complaint is in the usual form of complaints in like actions, and the plaintiff claims therein to recover the whole amount of the risk so taken.

The policy of insurance contains the following conditions:

"If an application, survey, plan or description of the property herein insured is referred to in this policy, such application, survey, plan or description shall be considered a part of this policy, and a warranty by the assured; and if the assured, in a written or verbal application, makes *any erroneous representation*, or omits to make known any fact material to the risk; * * * or if the assured is not the sole, absolute and unconditional owner of the property insured, *or of the land on which such building or buildings stand by a title in fee simple*, and this fact is not expressed in the written portion of the policy, * * * then and in every such case this policy shall be void. In case of loss, the assured shall give immediate notice thereof, and shall render to the company a particular account of said loss, under oath, stating the time, origin and circumstances of the fire, the whole value and ownership of the property, and the amount of loss or damage; and shall produce the certificate, under seal, of a magistrate, notary public or commissioner of deeds, nearest the place of the fire, and not concerned in the loss or related to the assured, stating that he has examined the

Wright vs. The Hartford Fire Insurance Company.

circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has without fraud sustained loss on the property insured to the amount claimed by the said assured. In no case shall the claim be for a greater sum than the actual damage to or cash value of the property at the time of the fire. * * * * When personal property is damaged, the assured shall put it in the best order possible, and make an inventory thereof, naming the quantity and cost of each article, and upon each article the damage shall be separately appraised; and the detailed report of the appraisers in writing under oath shall form a part of the proof required, * * * and until such proof and certificate are produced, * * * the loss shall not be payable. Any fraud or attempt at fraud, or any false swearing, on the part of the assured, shall cause a forfeiture of all claim under the policy. And it is further expressly covenanted by the parties hereto, that no officer, agent or representative of the company shall be held *to have waived* any of the terms and conditions of this policy, unless such waiver shall be indorsed hereon in writing. This policy is made and accepted upon the above *express* conditions."

It is alleged in the complaint, that, after the property was burned, the plaintiff applied to one Hull, then a justice of the peace of the town of Lima, and the justice nearest the place of the fire, for a certificate of the fire and loss as required by the policy, but that such justice, without any reasonable cause, and for the purpose of injuring the plaintiff, refused to give the same; also, that Hull was concerned in the loss, was a bitter enemy of the plaintiff, and before that time had made a criminal complaint against him, charging that the plaintiff was guilty of the crime of burning the property. It is further therein alleged that the plaintiff procured and gave to the defendant, in due time, the certificate, in the required form, of one P. C. Stillman, and that the latter " was at the time of said fire, and from thence hitherto has been and now is, a justice of the

peace in and for said town of Lima, and resides within about half a mile of the place of said fire, and did so at the time of said fire, and, with the exception of said Hull, is the nearest the place of said fire of any magistrate, notary public or commissioner of deeds; and that said Stillman was not concerned in said loss, nor related to this plaintiff; and that said certificate of said Stillman stated that he was at the time a justice of the peace and a resident of said Lima Center, Rock Co., Wis., and that he administered the above mentioned oath to this plaintiff, and one of the justices of the peace nearest to said fire in said village of Lima Center, and that he was not concerned in the above loss by fire, nor related to the said insured."

Full performance by the plaintiff of all the conditions of the policy to be performed by him, is also averred in the complaint.

In his application for the insurance (which application is the basis of the policy), the plaintiff stated that the value of the store was $1,000, of the stock $400, and of the tools and fixtures $400. To a question which required him to state the distances, materials and uses of other buildings within one hundred feet of the one to be insured, the plaintiff answered as follows: "About twenty-five feet south to frame building occupied as a hotel; three feet north to two-story frame store." He also stated, in reply to appropriate questions, that, except a mortgage for $200, he was the sole and undisputed owner of the property proposed to be insured; that he owned and held, by deed of warranty, the ground upon which the building stood; and that a certain brick wall between the hardware store (which was a brick building) and a wood or frame addition thereto (being the tinshop), was thirteen inches thick. Such application concludes as follows: "And the said applicant hereby covenants and agrees to and with said company, that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation,

value and risk of the property to be insured, so far as the same are known to the applicant and are material to the risk."

The answer, either by express averments, or by averments of want of knowledge or information sufficient to form a belief, contains specific denials of most of the material allegations of the complaint. It also contains the following defenses:

1. That Mr. Hull was the nearest magistrate to the place of the fire; that he was not concerned in the loss nor related to the plaintiff, and that the latter had never requested him to make the certificate required by the policy.

2. That when plaintiff made such application, the building insured was not worth $500, nor was the stock therein worth $200, nor the tools and fixtures worth $200; and that the plaintiff well knew the value of the property, and fraudulently overestimated the same.

3. That the damages by reason of the fire did not exceed, to the building $400, to the stock $40, and to the tools and fixtures $60.

4. That the plaintiff, "deliberately, premeditatedly and feloniously" set the building on fire, or caused it to done, and thus in his own wrong caused the insured property to be burned.

5. That there were other buildings within less than one hundred feet of the insured building, not disclosed in the application; and that the plaintiff was not the owner of a portion of the land on which the tin-shop addition stood.

6. That the plaintiff did not put the personal property, damaged by the fire, in the best order possible, as required by the policy.

7. That the brick wall between the hardware store and the tin-shop was only eight inches thick, instead of thirteen inches as stated in the application.

It is further alleged in the answer, that the proximity of such other buildings, the want of title in the plaintiff to a portion

of the ground upon which the insured building stood, and the fact that the brick wall above mentioned was but eight inches thick, were conditions material to the risk; and that, had their existence been known to the defendant, a higher rate of premium would have been exacted, or the risk would not have been taken.

The testimony introduced on the trial, and the rulings and instructions made and given by the court, are sufficiently stated in the opinion.

The jury found for the plaintiff, and assessed his damages at $1,200 — the full amount of the insurance. A motion for a new trial was denied; and judgment was afterwards entered pursuant to the verdict. The defendant appealed.

*Isaac Rogers*, for appellant. [No printed brief.]

*Cassoday & Carpenter*, for respondent, argued the following among other points: 1. Where an insurance agent personally examines the property insured and adjoining premises, and, while there, fills out an application for insurance (which is then signed by the owner of the property), and thereupon receives the premium, and issues the policy, the insurer is thereby *estopped* from defending on the ground that statements in the application are false, of whose correctness or falsity the agent had the same knowledge, or means of knowledge, as the insured. *Miner v. Phœnix Ins. Co.*, 27 Wis., 693; *McBride v. Republic F. Ins. Co.*, 30 id., 562; *May v. Ins. Co.*, 25 id., 291; *Beal v. Ins. Co.*, 16 id., 241. This rule is applicable where the statements of the application are expressly made *warranties* by the terms of the contract. *Miner v. Ins. Co.* and *McBride v. Ins. Co.*, *supra; Rowley v. Ins. Co.*, 36 N. Y., 550, op. by FULLERTON, J.: *Same v. Same*, 3 Keyes, 557, op. by DAVIES, J.; *Bidwell v. Ins. Co.*, 24 N. Y., 302; *Tallman v. Ins. Co.*, 3 Keyes, 87; *N. A. F. Ins. Co. v. Throop*, 22 Mich., 146; *Mich. State Ins. Co. v. Lewis*, Ch. Leg. News, Oct. 3, 1874. 2. The policy will always be upheld, notwithstanding statements or representations of the insured which were not strictly and formally accu-

rate, if they were substantially true, and the rights of the insurer were not injuriously affected by them. *Allen v. Ins. Co.*, 5 Gray, 384; *Collins v. Ins. Co.*, 10 id., 155; *Com. Ins. Co. v. Spankneble*, 52 Ill., 53; *Keith v. Ins. Co.*, id., 518.

LYON, J. We have had considerable difficulty in obtaining a correct understanding, as well of the facts of this case, as of the points upon which the defendant seeks a reversal of the judgment of the circuit court. This difficulty arises from the circumstances, that the learned counsel for the defendant, who usually prepares his cases and arguments with great care, has been disabled from so doing in the present cause by' severe and protracted indisposition. The testimony contained in the bill of exceptions is very voluminous, consisting of over 430 manuscript pages; and the comparatively small portion thereof printed in the abstract of the case does not seem to have been aptly selected to show the full tendency and effect of the testimony on behalf of the plaintiff. The cause was not argued at the bar, and, for the reason just stated, the counsel for the defendant, with the consent of the opposing counsel, was excused from filing a printed argument or brief, and we have before us only his random brief, which was evidently hastily prepared for use in the circuit court. Of course, these obser-. vations imply no censure, but they are made solely for the purpose of explanation, should we fail to comprehened fully and correctly, any material fact or question involved in the issue.

It will be convenient to examine the points which seem to present themselves for consideration, in the order in which they are stated in the answer.

1. It will be remembered that a provision contained in the policy of insurance required that, in case a loss should occur, with his proofs of such loss the plaintiff should produce a certificate of certain facts and opinions, "under the seal of a magistrate, notary public or a commissioner of deeds, nearest the place of the fire and not concerned in the loss or related

to the assured." The plaintiff accompanied his proofs of loss with the certificate, in the prescribed form, of one Stillman, then a justice of the peace of Lima, and the nearest officer designated in the policy, to the place of the fire, except one E. Hull, who was also a justice of the peace. The proofs were objected to by the general manager of the defendant company for the reason that the certificate was not made by the magistrate, notary or commissioner *nearest the place of the fire,* that is, because it was not made by justice Hull. It seems that the plaintiff had applied to the latter justice for the certificate, but he refused to give it.

The learned circuit judge submitted to the jury the question of fact, whether there had been a substantial compliance with this condition of the policy, and instructed them that a substantial compliance therewith was sufficient. He refused to give an instruction to the effect, that if Mr. Hull was the magistrate nearest the place of the fire, not concerned in the loss or related to the assured, his certificate was indispensable to the plaintiff's right of action.

The evidence shows conclusively that the fire from the plaintiff's burning building communicated directly to, and burned, the building of Mr. Hull occupied by him as a store and residence, and also burned a portion of his goods therein; that he had no insurance on the property thus destroyed; and that he made a complaint to a magistrate, against the plaintiff, charging him with the crime of setting the fire. If the plaintiff willfully set the fire which destroyed his property, the defendant company is not liable for his loss, but he is liable to Mr. Hull for the loss of the latter caused by the same fire. Had Mr. Hull made the certificate required by the policy, it would have been strong, almost conclusive, evidence against his right to recover for his loss in an action therefor against the plaintiff. Hence he had an interest in withholding the certificate, and in the establishing of the fact that the plaintiff willfully set the fire.

We do not understand that the term " *concerned in the loss* " as employed in the policy means merely a pecuniary interest in the money which may be obtained from the insurance company on account of a loss, but that it is inserted in the policy to secure an impartial arbiter between the company and the assured, — one who will neither make nor lose, directly or indirectly, by the determination of the rights and obligations of the parties in respect to the loss, but who stands indifferent between them. We think, therefore, that justice Hull was " concerned in the loss," and that justice Stillman was the proper person to make the certificate ; and had the learned judge so instructed the jury, it would not have been error. The instructions given were more favorable to the defendant than it had any right to demand, and it cannot be heard to complain of them.

2. On the subject of the value of the insured property at the time the policy was issued, the testimony is very conflicting. There certainly is testimony tending to show, and from which the jury might have found, that the property was then of the value stated by the plaintiff in his application for insurance. The judge at first instructed the jury that if the plaintiff overestimated such value, honestly, and in consequence of a mere error of judgment, it would not avoid the policy. But he subsequently modified his charge in this respect, and instructed them that unless the property was actually worth the sum stated in the application, the policy is void, and that its validity does not depend upon the plaintiff's knowledge that he had made an overestimate of the value. Under the modified instruction the jury must have found that the value of the property was not overestimated by the plaintiff. This disposes of the point.

3. The testimony also tends to show that the plaintiff's loss on each class of insured property equalled the insurance thereon, and the jury were instructed that if he recovered in the action, his recovery must be limited to his actual loss. This was manifestly correct.

4. The question as to whether the plaintiff set the fire was litigated on the trial, and was fairly submitted to the jury. On this issue of fact the verdict was for the plaintiff, and we cannot disturb it.

5. As to the proximity of other buildings not mentioned in the application. There is considerable testimony relating to a building on an adjoining lot in the rear of the insured store, not so mentioned, but we find no statement of the distance between the two buildings. If such distance was less than 100 feet, the burden was upon the defendant to prove the fact. Failing to do so, the presumption is that the distance between the two buildings was more than 100 feet.

There was, however, a building on the opposite side of the street, within less than 100 feet of the insured building; but it is very evident from the testimony that the agent of the defendant who wrote and received the application and delivered the policy, knew the fact. He went upon the premises and examined them before taking the risk, and he does not claim to have been ignorant of the existence and location of the building across the street. Furthermore, there is no testimony tending to show that the plaintiff fraudulently or intentionally omitted to mention such building in his application. Under these circumstances, the failure thus to mention it does not vitiate the policy. *Miner v. Phœnix Ins. Co.*, 27 Wis., 693, and cases cited.

Testimony was introduced on the trial tending to show that a strip of ground about four feet wide, under the side of the tin-shop next to Mr. Hull's store, did not belong to the plaintiff, but belonged to Hull. The plaintiff stated in the application that he was the owner of the ground upon which the tin-shop stood. This is claimed to be a misrepresentation of title which avoids the policy. It is only necessary to say on this subject, that, until after the fire, all parties supposed that the plaintiff owned the strip, and doubt was raised as to his title thereto by a subsequent survey; that the testimony tending to show that

Hull owned it was most unsatisfactory; and that the question of ownership was submitted to the jury with an instruction that if they found that the plaintiff was not the owner, he could not recover. Under this instruction the jury must have found that the plaintiff was the owner of such strip, and the verdict is conclusive of that question.

6. We think there is nothing in the point that the plaintiff failed to put the damaged property in the best possible order after the fire. The value of such property was trifling in amount, and there seems to be no proof that its value could have been improved. Hence, the refusal of the judge to give an instruction on that subject, asked on behalf of the defendant, was not error.

7. The only remaining defense relates to the thickness of the brick wall between the tin-shop and the hardware store. It is stated in the application that such wall was thirteen inches thick, whereas the testimony is quite satisfactory that it was only about eight and a half inches thick. Yet there is some testimony tending to prove that it was a thirteen-inch wall. The plaintiff testified that he measured across the door casing in the wall, and found the distance sixteen inches; and another witness testified that the door jamb projected one inch and a half beyond the wall on either side. The thickness of the wall, as stated in the application, was merely an estimate from such measurement made by the plaintiff, and it seems to have been an over-estimate thereof. The judge gave the same instruction relative to such statement, that he gave concerning the alleged over estimate of the value of the insured property, and submitted it to the jury as a question of fact, whether there was a misrepresentation in respect to the thickness of the wall. The verdict for the plaintiff shows conclusively that the jury found the wall to have been thirteen inches thick. While, probably, we should not have so found from the testimony, yet, inasmuch as there was some testimony to support the verdict in that particular, we are powerless to interfere.

But we fail to find any testimony tending to show that the plaintiff did not make an honest estimate of the thickness of the wall; and, inasmuch as the agent of the defendant was present when the measurement and estimate were made, and had full opportunity to correct the same, if erroneous, we should hesitate to reverse the judgment, even though it were conclusively proved that the wall was less than thirteen inches thick.

Many exceptions were taken on behalf of the defendant to the rulings of the court on objections to the admission of testimony offered on the trial; but we discover no error in these rulings, or at least none of sufficient materiality to work a reversal of the judgment.

Upon due consideration of the whole case, it seems to us that the judgment of the circuit court ought to be affirmed.

*By the Court.* — It is so ordered.